JOHN F. LENNON vs. BOARD OF CANVASSERS AND REGISTRA-
TION OF THE CITY OF PAWTUCKET et als.

APRIL 7, 1909.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Taxes.  Payment of Personal Property Taxes by Political Committees.
Constitutional Law.*

Article VII, section 1, of amendments to the constitution provides:
" *Provided,* That no person shall at any time be allowed to vote in the election
of the city council of any city, or upon any proposition to impose a tax or
for the expenditure of money in any town or city, unless he shall, within
the year next preceding have paid a tax assessed upon his property therein,
valued at least at one hundred and thirty-four dollars."—

*Held,* that the payment of the taxes of personal property voters by a political
committee, without authority by the persons assessed so to do, did not con-
fer a right of suffrage.

(2)  *Taxes.  Certiorari.  Elections.*

Where it appears that 467 votes of persons not qualified (because of their taxes
having been paid without authority by a political committee) were cast at
a ward election, which number was in excess of the majority received by
the incumbents of the offices, the city treasurer having certified their names
to the board of canvassers and that board having added their names to the
voting-lists, and such certification by the city treasurer, upon the facts
shown, being unauthorized by law, *certiorari* will issue quashing the certifi-
cate of the city treasurer, as to such names, and also quashing the record of
the board of canvassers showing such persons to have been qualified, and
also quashing the record of the result of the election.

In the above state of facts, the evidence not showing for what candidates the
illegal votes were cast, nor for whom the legally qualified electors voted,
the incumbents of the offices not being parties to the proceedings, the court
can not seat the petitioner, but will leave the filling of the offices for another
election.

Such decision does not prevent any of such disqualified persons from having
his name restored to the voting-list for any subsequent election, for which
the taxes assessed in July, 1908, furnishes the basis of qualification, if he
can individually satisfy the collector of taxes that he lawfully authorized
the payment of his tax by a third party.

CERTIORARI.  Writ granted.

BLODGETT, J.  The evidence taken at the various hearings
held since the filing of the former opinion in this case (29 R. I.

329) fails to show that the board of assessors of taxes of Paw-
tucket were unwarranted in assessing the personal property
taxes in said city in the year 1908, and this proceeding, as
to said board of assessors, must be dismissed.

The evidence also fails to show that the respondent Barclay
was authorized to pay the tax of more than one voter, who
swears that he personally gave Barclay the money therefor.
The attempted justification as to all others has entirely failed,
even Barclay testifying he did not know whose taxes he paid,
while admitting that he paid $3,800 to the respondent White,
as collector of taxes, on October 27, 1908.

(1)     It was stated at the hearing that the practice of paying the
taxes of personal property voters by political committees is not
of recent origin, nor confined to Pawtucket.   Conceding this
to be so, such payment can not be held to confer a right of
suffrage not conferred by law.   The provisions of section 1, of
article VII of amendments to the constitution are these:   "*Pro-
vided*, that no person shall at any time be allowed to vote in
the election of the city council of any city, or upon any propo-
sition to impose a tax or for the expenditure of money in any
town or city, unless he shall within the year next preceding
have paid a tax assessed upon his property therein, valued at
least at one hundred and thirty-four dollars."

(2)     The testimony clearly shows that the taxes of five hundred
and fifteen personal property voters in the third ward of
Pawtucket were paid by the Barclay fund, but fails to show
that such payment was authorized by the persons assessed;
that the names of these five hundred and fifteen persons were
placed upon the voting-lists by the board of canvassers, and
that all but forty-eight of the persons whose taxes were so paid
voted for alderman and councilmen at said election, thus show-
ing that four hundred and sixty-seven votes of persons not
qualified were cast thereat—a number far in excess of the
majority declared by said board of canvassers to have been
received by the present incumbents of said offices.   This
payment by Barclay was made effective for this purpose, in
the first instance, by the act of the respondent White, who
first testified that he could not tell by his books who paid their

own taxes, then with knowledge that these and other taxes to the number of more than eleven hundred were paid by Barclay after five o'clock on the last day on which payment could be made to qualify for such election, and knowing that these eleven hundred persons did not pay the same in person, and after the institution of legal proceedings to restrain him from certifying to the board of canvassers, under the provisions of § 4 of cap. 808, Pub. Laws, passed January 23, 1901, did certify that such taxes had been paid by the persons assessed, acting, as he says, under the advice of counsel in so doing; and secondarily, by the action of the board of canvassers, who added to the voting-list these names so certified, against the protest and remonstrance of the petitioner, and refused to hear evidence that these persons were not so qualified.

In the cash-book of the collector, on that day, it appears that a red line was drawn by one of his clerks, which line the clerk admits was placed there shortly after five o'clock, when he supposed the day's work was closed, and before the Barclay payment was made, he testifying that all taxes paid on that day prior to the making said line had been duly entered in said cash-book. A few others paid in person that evening, and they are all identified, produced in court, and testified to the fact of payment and the amount thereof.

It is undisputed that the Barclay fund was to be, and was, applied to the payment of taxes, on a valuation of $200 each, assessed against the persons whose names appeared on certain voting-lists arranged in alphabetical order and theretofore filed in the office of the respondent White by members of a certain political committee in said Pawtucket, and the numbers of the tax assessments corresponding to these same names in said third ward appear in the same alphabetical order on the cash-book of the respondent White, and it is not even attempted by any of the respondents, after several months delay and many hearings, to show that any one of these persons paid his own tax. The testimony of the respondent Barclay is that he does not know whose taxes were paid by him. We are of the opinion that this certification of these names by the respondent White was unauthorized by law.

The writ will accordingly issue quashing the certificate of the respondent White as to the five hundred and fifteen names in said third ward, between the names of John N. Aldrich and James H. Wills, inclusive, as shown by said cash-book to have been thus certified, and quashing also the record of the board of canvassers showing these persons to have been qualified as personal property voters for said election, and quashing also the record of the result of the election.

The evidence does not show for what candidates these illegal votes were cast; nor does it show for whom the legally qualified voters in said ward voted, nor are the present incumbents of the offices of alderman and councilmen from this ward parties to this proceeding. We cannot seat the petitioner in this proceeding, but, having thus purged the voting-lists and quashed the certificate of election of the present incumbents, must leave the filling of these offices for another election.

We do not intend, by the foregoing decision, to be understood as holding that any one or all of these five hundred and fifteen persons can not have his or their names restored to the voting-list for any subsequent election for which the taxes assessed in July, 1908, furnished the basis of qualification, provided such person or persons can individually satisfy the collector of taxes that his or their taxes were lawfully authorized to be paid by Mr. Barclay, so that a lawful certification of such payment may be made to the board of canvassers, as a necessary prerequisite to having his or their names placed upon the voting-lists.

An order specifying the individual names as to which the certificate of the respondent White is quashed and which are to be so removed from said voting-lists may be presented for entry, in accordance with this opinion, on April 12, 1909.

*Hugh J. Carroll and John J. Fitzgerald,* for petitioner.

*James Harris, Irving Champlin, Frank W. Tillinghast, Edward W. Blodgett,* for respondents.